E-FILED
Tuesday, 24 March, 2026  10:25:40 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| SCOTT J. NJOS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | **Case No. 25-1304** |
| | ) | |
| RODNEY ALFORD *et al.*, | ) | |
|     Defendants. | ) | |

**ORDER**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is a Complaint (Doc. 1) filed under 42 U.S.C. § 1983 by Plaintiff Scott Njos, an inmate at Pontiac Correctional Center ("Pontiac"). Plaintiff has also filed Motions for Counsel (Doc. 4, 8), Leave to File an Addendum (Doc. 7), Discovery (Doc. 9), Injunctive Relief (Doc. 10), to Correct Electronic Filing (Doc. 12), and Status (Doc. 14).

I.      **Complaint**

    **A. Screening Standard**

The Court must "screen" Plaintiff's complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the complaint, the Court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be

provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### B. Facts Alleged

Plaintiff identifies the following entities and Pontiac employees as Defendants: Medical Director Dr. Rodney Alford; Nurses Amanda, Clay, Dyer, Meg, Sabrina, Smart, and Stephanie; Healthcare Administrator Ginger Davis; Nurse Practitioners Patricia Ebot and Richard; former Warden Mindi Nurse; Nursing Supervisor Nikki Rambo, John and Jane Does, the Illinois Department of Corrections ("IDOC"); and Wexford Health Sources, Inc. ("Wexford").

Plaintiff has been using urinary catheters since 2009. (Pl. Compl., Doc. 1 at 3:1.) Plaintiff entered the Illinois Department of Corrections on December 15, 2021. *See* Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html, search for Scott J. Njos (last visited March 19, 2026) (showing a December 15, 2021, admission date). Between 2021 and 2024, Plaintiff used a single-use catheterization system that provided eight catheters daily, with the option to receive four additional catheters upon request. During this time, no medical personnel advised Plaintiff to reuse single-use catheters. (Pl. Compl., Doc. 1 at 4:9-10.)

Upon transferring to Pontiac on May 21, 2024, Plaintiff claimed that none of his prescriptions for single-use catheters, associated lubricants, gloves, antiseptic wipes, biohazard bags, or bedside urine bottles were provided. Plaintiff stated that for months, he had "to write 'D's' and to vocalize daily requests for catheters." Sometime later,

Plaintiff acknowledged receiving four single-use catheters. (Pl. Compl., Doc. 1 at 5:12-15.)

Plaintiff asserts he has experienced irritation since 2009 when using scented soaps, which are the only soaps offered at Pontiac. Plaintiff claims that during his twice-daily med-lines, Defendants informed him that, per Defendant Alford's instructions, if Plaintiff needed more than the prescribed number of catheters, he should wash and use his single-use catheters. Plaintiff identifies the aforementioned Defendants as "Nurse Practitioners at sick call appointment" and "urgent care … nurses, nurse practitioners, and doctors." (*Id*. at 7:28, 31; 8:32.)

Plaintiff alleges that every time he requested mild unscented antibacterial soap, Defendant Alford refused and directed him to use the soap provided by Pontiac or purchase soap at the commissary. Plaintiff acknowledged that in March 2005, Alford told Plaintiff he was ordering antibacterial soap, a wash basin, and reusable catheters. Plaintiff notes that Alford's actions were the result of an emergency visit he had with Defendant Richard, a visiting Nurse Practitioner from Stateville Correctional Center. Richard told Plaintiff that he was suffering from an antibiotic-resistant bacterial infection. Richard ordered Plaintiff an indwelling catheter, medication for his infection, and warned against reusing single-use catheters. A week later, Alford removed the indwelling catheter, and according to Plaintiff, everything went back to what it was." (*Id*. at 8:34-35; 9:37-38.)

Plaintiff claims that he sent weekly letters to Defendant Davis and, through emails sent by his mental health provider, to "fulfill her duty" as Healthcare Administrator, "to oversee the provision of the Healthcare unit." (*Id*. at 15:63.) Plaintiff further claims that

Wexford's policy requiring reuse of single-use catheters applies to all inmates prescribed single-use catheters. (*Id.* at 13-14:63.)

**C. Analysis**

To be deliberately indifferent, a medical professional's decision must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). Plaintiff's account is sufficient to state an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Alford.

Similarly, Plaintiff's assertion that Defendant Davis was made aware of his medical concerns through letters he addressed to Davis and emails his mental health provider sent to Davis is sufficient to state an Eighth Amendment deliberate indifference claim against Davis at the screening stage. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (concluding that to establish adequate notice to the prison official of a violation of the Eighth Amendment, a plaintiff "has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Defendant Wexford can be held liable under § 1983 if an unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a

governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby [clarify] that municipal liability is limited to action for which the municipality is … responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphases in original).

Plaintiff states a claim against Defendant Wexford for its purported policy requiring the repeated use of single-use catheters, which Plaintiff asserts was the direct cause of his urinary tract infection. *See Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014) ("The plaintiff . . . must establish a causal link between the corporation's policy (or lack of policy) and the plaintiff's injury."); *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) ("To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights.") (quoting *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). However, Plaintiff fails to state a claim against the remaining Defendants.

Under Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). "This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601–02 (7th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Throughout his pleading, Plaintiff uses the letter "D" to refer to Defendants Alford, Amanda, Clay, Davis, Dyer, Ebot, Meg, Nurse, Rambo, Richard, Sabrina, Smart, Stephanie, IDOC, and Wexford. (Pl. Compl., Doc. 1 at 1.) For example, Plaintiff asserts that a March 2025 urinalysis performed by "D's" showed he was suffering from a bladder infection. (*Id.* at 18:72.) Although this Court is mandated to construe facts Plaintiff presents in his pleading liberally, Plaintiff attempts to conflate two entities and thirteen medical and prison officials into a single party violates the intent of Rule 8.

As to Defendant Richard, Plaintiff's account does not demonstrate deliberate indifference. Plaintiff acknowledges that Richard diagnosed and treated his infection, ordered an alternative catheter, and warned Plaintiff of the consequences of reusing single-use catheters. Additionally, Plaintiff does not state a claim against the Illinois Department of Corrections. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("IDOC was properly dismissed because it is not a person subject to suit under § 1983.").

## II.    Counsel

Plaintiff moves to recruit counsel (Docs. 4, 8). Plaintiff has no constitutional right to counsel, and the Court cannot require an attorney to accept pro bono appointments in

civil cases. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that although indigent civil litigants have no constitutional right to counsel, a district court may, in its discretion, request counsel to represent indigent civil litigants in certain circumstances). In considering Plaintiff's motion for counsel, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it [her]self?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff's Motion for Counsel is denied because he has not satisfied his threshold burden of demonstrating that he has attempted to hire counsel, which typically requires writing to several lawyers and attaching the responses received.

### III.    Injunctive Relief

The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). A preliminary injunction is an "extraordinary and drastic remedy" and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted). In civil suits, "damages are the norm, so the plaintiff must show why his case is abnormal." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (quoting *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 275 (7th Cir. 1992)).

"To determine whether a situation warrants such a remedy, a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). "A party seeking a preliminary injunction must satisfy all three requirements in the 'threshold phase' by showing that (1) [he] will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH-Indianapolis, LLC v. Consol. City of Indianapolis*, 889 F.3d 432, 437 (7th Cir. 2018).

Moreover, the Seventh Circuit has described the type of injunction requiring affirmative action as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued" because they require the court to command a defendant to take a particular action. *Id.*

First, Plaintiff asks the Court to become involved in the day-to-day operations of Pontiac's medical services. Specifically, Plaintiff requests that "all the named Defendants be ordered not to take part in [Plaintiff's] future medical care," and that all of Plaintiff's medical records from September 2005 to present be reviewed for spoliation. Additionally, Plaintiff requests an order allowing him to retain certain medical equipment in his cell, and that he be provided access to his medical and mental health incident reports. (Doc. 10 at 6.)

However, absent from Plaintiff's filings is any discussion regarding the threshold requirements noted *supra*. Thus, Plaintiff's Motion for Injunctive Relief (Doc. 10) is denied as Plaintiff has not shown a basis for such extraordinary relief.

## IV.    Plaintiff's Remaining Motions

### A. Addendum

Plaintiff's Motion for Leave to File an Addendum (Doc. 7) to his Complaint is denied. Plaintiff's filing seeks to add additional facts to his pleading. However, the Court does not accept piecemeal amendments to pleadings. Additionally, a complaint is not "a statement of the party's *proof*." *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) (emphasis in original) ("Litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of Rule 8."). "The Rules of Civil Procedure make a complaint just the starting point. Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving . . . ." *Id.* at 518. It is unnecessary, and in fact, forbidden, for a complaint to include "all of the evidence needed to prevail at trial." *Id.* (declaring that plaintiffs should not be "larding their complaints with facts and legal theories"). Plaintiff can provide additional facts or exhibits supporting his claims during the discovery process, which the Court will explain in a Scheduling Order after Defendants have been served and filed their responsive Answers, which typically takes sixty days.

However, if Plaintiff elects to file an amended pleading, it must stand independently without reference to his initial filing and contain all claims against all defendants. Plaintiff's amendment must specify the constitutional violation, when it occurred, and the Defendant or Defendants personally involved. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.").

The Court reminds Plaintiff of the brevity required under Rule 8. Plaintiff's initial Complaint (Doc. 1) was thirty-two pages, and the Court will not be inclined to review an amended pleading of similar length. *See Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) ("District judges are busy, and therefore have a right to dismiss a complaint that is so long that it imposes an undue burden on the judge, to the prejudice of other litigants seeking the judge's attention.").

**B. Discovery, Correction, and Status**

Plaintiff's Motion for Discovery (Doc. 9) requests "pre-service discovery" to copy his medical and mental health records, claiming a conflict of interest because the defendants he identified in his initial pleading remain in control of his care and custody. Plaintiff's assertion that manipulation of his records will occur is unsupported by any persuasive evidence. Therefore, Plaintiff's request is denied.

Plaintiff's Motion to Correct Electronic Filing (Doc. 12) seeks to separate two motions that were inadvertently filed as one. Plaintiff's filing is granted. The Clerk of the Court has since corrected the record to reflect the two filings. (Docs. 9, 13.)

Plaintiff's Motion for Status is moot with the entry of the Court's Order.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motions for Counsel (Docs. 4, 8), Leave to File an Addendum (Doc. 7), Discovery (Doc. 9), and Injunctive Relief (Doc. 10) are DENIED.**

2) **Plaintiff's Motion to Correct (Doc. 12) is GRANTED.**

3) **Plaintiff's Motion for Status (Doc. 14) is MOOT.**

4) **According to the Court's screening of Plaintiff's Complaint (Doc. 1) under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Alford and Davis. Plaintiff also states a policy claim against Defendant Wexford pursuant to the United States Supreme Court's ruling in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Plaintiff's claims against Alford and Davis proceed in their individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

5) **The Clerk of the Court is DIRECTED to terminate Defendants Amanda, Clay, Dyer, Ebot, Meg, Nurse, Rambo, Richard, Sabrina, Smart, Stephanie, and IDOC.**

6) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has entered an appearance before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

7) **The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After service of process, the Court will enter an order setting discovery and dispositive motion deadlines.**

8) Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. An answer sets forth the Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

10) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel files an appearance and the Court enters a scheduling order, which will provide more detailed information about the discovery process.

11) Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

12) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

13) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant and will

require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

14) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

15) **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**

ENTERED March 24, 2026.

s/ *Colleen R. Lawless*

_____

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE